# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

John Bautista,

      v.                Case No. 12-cv-126-NJ

Town of Lomira and
Jon Schulteis

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

As is often the case where unlawful arrest and excessive use of force are alleged, in this case, many important facts are disputed. Since the facts and inferences to drawn therefrom must be taken in the light most favorable to the non-moving party, it is impossible for the Defendants to establish that they are entitled to summary judgment.

### I. SUMMARY JUDGMENT STANDARD

The primary purpose of summary judgment is to "isolate and dispose of factually unsupported claims." *Alberio v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admission on file, together

with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The defendant, as the party seeking summary judgment, has the burden of establishing the lack of any genuine issue of material fact. *Id.* at 322-23.

The Court must "consider the evidentiary record in the light most favorable to the plaintiff and draw all reasonable inferences in his favor." *Lesch v. Crown Cork & Seal Co.,* 282 F.3d 467, 471 (7th Cir. 2002). The Seventh Circuit has "routinely found that a nonmoving party's own affidavit can constitute affirmative evidence to defeat a summary judgment motion." *Payne v. Pauley,* 337 F.3d 767, 771 (7th Cir. 2003).

This standard is applied with added rigor in cases where intent is a central issue. *McCoy v. WGN Cont'l Broad. Co.,* 957 F.2d 368, 370-71 (7th Cir. 1992). See also, *Stumph v. Thomas & Skinner, Inc.,* 770 F.2d 93, 97 (7th Cir. 1985) ("`Summary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles.'") (quoting *Pfizer, Inc. v. Int'l Rectifier Corp.,* 538 F.2d 180, 185 (8th Cir. 1976), and *Visser v. Packer Eng'g Assocs.,* 924 F.2d 655, 660 (7th Cir. 1991)). (Malicious intent is an element of the supplemental state claim of malicious prosecution.)

## II. QUALIFIED IMMUNITY STANDARD

Defendant has moved for summary judgment on a qualified immunity defense. As the party suing a government official, the plaintiff has the burden to

2

show that (1) the defendant's actions violated the plaintiff's federal rights, and (2) those rights were clearly established at the time of the alleged violation. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Although the plaintiff has the ultimate burden of showing that qualified immunity does not apply, at summary judgment the defendant must show that the plaintiff cannot prove either (1) that the defendant took any act that violated the plaintiff's federal rights or (2) that a reasonable public official in the defendant's position would have known that his actions violated plaintiff's rights at the time he took them. *Kerr v. Farrey*, 95 F.3d 472, 480 (7th Cir. 1996) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Qualified immunity protects government officials from liability for civil damages if their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It shields an officer from liability if the officer "reasonably believes that his or her conduct complies with the law." *Pearson*, 555 U.S. at 244. Analysis of an assertion of qualified immunity involves two questions: (1) using plaintiff's version of the facts, whether a constitutional right was violated and (2) whether that right was clearly established at the time. *Pearson*, 555 U.S. at 236; *Viilo v. Eyre*, 547 F.3d 707, 709-10 (7th Cir. 2008).

3

Where a claim of qualified immunity is based upon disputed facts, the issue cannot be resolved without a trial. *Gonzelez v. City of Elgin*, 57 F.3d 526, 540 (7th Cir. 2009).

### III. THE FOURTH AMENDMENT STANDARD THAT GOVERNS THE ANALYSIS OF THE DEFENDANT'S WARRANTLESS ENTRIES.

The Fourth Amendment to the United States Constitution provides that "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Supreme Court interpretation of the Fourth Amendment in regard to entry into a private home has been clear and consistent:

> It is beyond dispute that the home is entitled to special protection as the center of the private lives of our people. We have, after all, lived our whole national history with an understanding of the ancient adage that a man's house is his castle to the point that the poorest man may in his cottage bid defiance to all the forces of the Crown.

*Georgia v. Randolph,* 547 U.S. 115, 106 (internal quotations and citations omitted)

The Fourth Amendment prohibits "unreasonable" searches. The general rule is that a warrant is required for a search to be reasonable:

> The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for

4

> illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals.

*McDonald v. United States*, 335 U.S. 451, 455-56 (1948). A warrantless entry into a private domicile is presumptively unreasonable. *Welsh v. Wisconsin*, 466 U.S. 740, 748-49 (1984). "[T]he right protected - that of presumptively innocent people to be secure in their homes from unjustified, forcible intrusions by the Government - is weighty." *Steagald v. United States*, 451 U.S. 204 (1981).

The Supreme Court has articulated the burden in demonstrating that a search was reasonable: "A search or seizure carried out on a suspect's premises without a warrant is *per se* unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions." *Coolidge v. New Hampshire*, 403 U.S. 443, 474 (1971). The Court has "emphasized that exceptions to the warrant requirement are few in number and carefully delineated" and that the police "bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches." *Welsh*, 466 U.S. at 749-50.

### IV. THE WARRANTLESS ENTRIES WERE UNCONSTITUTIONAL SEARCHES.

Officer Schulteis did not have a warrant to enter the home of John Bautista and Sharon Stuebs. PPFOF #'s 51-52. The Defendant seeks to justify his warrantless entry

5

into the home on two grounds: (1) Ms. Stuebs consented to his entry, and (2) he did not enter to investigate a crime but as a community caretaker to check on the welfare of the children. The facts as to both consent and Officer's Schulteis role are contested and therefore do not warrant summary judgment.

### A. Taking the Facts in the Light Most Favorable to the Plaintiff, Ms. Stuebs Refused Consent for Officer Schulteis to Enter the Home.

The Supreme Court has repeatedly reiterated that a citizen is under no obligation to open his home to police who simply knock on the door in hope of gaining entry:

> When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do. And whether the person who knocks on the door and requests the opportunity to speak is a police officer or a private citizen, the occupant has no obligation to open the door or to speak. He may decline to listen to the questions at all and may go on his way…. And even if an occupant chooses to open the door and speak with the officers, the occupant need not allow the officers to enter the premises and may refuse to answer any questions at any time.

*Kentucky v. King*, ___ U.S. ___, 131 S.Ct.1849, 1862, 179 L.Ed. 2d 865 (2011)(internal citation and quotation omitted).

The evidence taken in the light most favorable to the Plaintiff shows that both Sharon Stuebs and John Bautista sought to stand on their constitutional right to deny entry to a police officer, and that Officer Schulteis blatantly ignored their assertion of this right.

6

When Schulteis arrived at the Stuebs/Bautista home, Ms. Stuebs answered the door. She stepped outside to talk to Officer Schulteis because she didn't want him in her house. Ms. Stuebs did not like the idea of having a policeman in her house, and it was her understanding that she was not required to let a police officer in her house unless he had a warrant. When Officer Schulteis said he needed to talk to Zack, Ms. Stuebs offered to go in and get Zack to come out and talk to him. As soon as she opened the door to do so, Officer Schulteis barged right past her and marched into the house. It is Ms. Stuebs' assertion that she explicitly told Schulteis that he was not invited in. See PPFOF #'s 31-48.

### B. Defendant Admits that Mr. Bautista Emphatically Refused Entry; Such Refusal Renders any other Consent Null and the Entry Unlawful.

Defendant Schulteis tries to assert that Ms. Stueb consented by acquiescing in his entry in that she failed to protest vigorously enough once he had pushed his way into the house. Even if that were the case, the one undisputed fact in this case is that Mr. Bautista protested vehemently that Schulteis was not permitted in their home without a warrant and that he should leave. See PPFOF #'s 53-56. According to the Supreme Court, where there are two occupants present at the time police seek entry, the objection of one trumps the consent of the other:

> The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later

7

> objects to the use of evidence so obtained. The question here is whether such an evidentiary seizure is likewise lawful with the permission of one occupant when the other, who later seeks to suppress the evidence, is present at the scene and expressly refuses to consent. We hold that, in the circumstances here at issue, a physically present co-occupant's stated refusal to permit entry prevails, rendering the warrantless search unreasonable and invalid as to him.

*Georgia v. Randolph,* 547 U.S. 103, 106 (2006) (internal citations omitted). Therefore, the initial entry into the home cannot be deemed reasonable on the basis of consent. The facts of this case are virtually identical to those in Randolph, decided in 2006, so this aspect of the law was clearly established on May 8, 2011.

### C. Taking the Facts in the Light Most Favorable to the Plaintiff, the Proposition that Officer Schulteis Entered the Home as a Community Caretaker is Pretextual.

Police need not apply for a warrant where they are responding to an emergent, life-threatening situation. See, e.g., *Mincey v. Arizona,* 437 U.S. 385, 393, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (acknowledging the right of police to respond to emergency situations "threatening life or limb" and indicating that police may conduct a warrantless search provided that the search is " 'strictly circumscribed by the exigencies which justify its initiation' ").

The effort to show that Schulteis gained entry in order to check on the welfare of the children is belied by the contrary observations of those who witnessed his behavior. He said he entering the house to investigate a crime; he did not, as he now asserts, ever say he was responding to a welfare check; and once in the home, he did

8

not, as he now asserts, make any effort to check on the children. PPFOF #'s 37-42, 56-58.

Even if Schulteis had intended to act as a community caretaker rather than as an investigator, the situation to which he was responding was not sufficiently emergent to justify such an intrusion. The Defendants now seek to exaggerate the situation to which Schulteis responded into domestic violence. In actuality, what transpired was a two second shoving match between an 18 year old and his stepfather. PPFOF #'s 16-27. Importantly, the call from police dispatch that sent Officer Schulteis to the home informed him that the complainant alleged only that he had been pushed into a sofa. PPFOF # 134. Such an allegation is not the type that has been allowed to justify a warrantless entry as either exigent or based on a community caretaker justification.

Although the Supreme Court of Wisconsin has a fairly generous application of the caretaker doctrine, the Seventh Circuit's established view (which governs) is far more narrow. In 1982, the Seventh Circuit ruled that *Cady v. Dombrowski*, 413 U.S. 433 (1973) limits the use of the caretaker exception to situations involving cars. *United States v. Pichany*, 687 F.2d 204, 208–09 (7th Cir.1982).

### D. Neither Consent nor Community Caretaking Justifies the Warrantless Entry into the Garage to Arrest John Bautista.

Officer Schulteis admits that once he talked to Zack, he no longer had concerns for the immediate safety of the family, and he was solely investigating a crime. PPFOF # 69. When Bautista walked through his garage to his car parked in the driveway and

9

drove it into the garage to put it away for the night, Schulteis entered the garage to arrest him. A garage is part of the protected area of the home that cannot be entered without a warrant. There can be no assertion of either consent or exigent circumstances to justify the entry into the garage. Even the county's attorney who was prosecuting the criminal case against John Bautista conceded that entry was unlawful.

### V. THE DEFENDANT'S SEIZURE OF THE PLAINTIFF VIOLATED THE FOURTH AMENDMENT IN SEVERAL RESPECTS

A person is seized and thus entitled to challenge the government's action when officers, by physical force or a show of authority, terminate or restrain the person's freedom of movement through means intentionally applied. *Brendlin v. California,* 551 U.S. 249, 254 (2008); *Florida v. Bostick*, 501 U.S. 429, 434; *Brower v. County of Inyo*, 489 U.S. 593, 597. Even the "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]". *Whren v. United States*, 517 U.S. 806, 809-10 (1996).

#### A. The Arrest Was Made Without Probable Cause

The Plaintiff asserts that he was falsely arrested. To prevail on a claim of an arrest in violation of the Fourth Amendment, the plaintiff must show that he was arrested without probable cause; probable cause is an absolute defense to such a claim. *Williams v. Rodriguez,* 509 F.3d 392, 398 (7th Cir.2007). An officer has probable cause to

10

arrest a person if, at the time of the arrest, the "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979).

The question of existence of probable cause must be determined by a jury "if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Sornberger v. City of Knoxville, Ill.,* 434 F.3d 1006, 1013–14 (7th Cir.2006); *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir.1993)). Only if the underlying facts claimed to support probable cause are not in dispute may the court decide whether probable cause exists. *Maxwell,* 998 F.2d at 434.

The Plaintiff asserts that he did not swear at Schulteis until after he was arrested, did not strike or assault Zack other than to push him onto a sofa, and did not resist arrest. To the extent that Schulteis says differently, the Plaintiff asserts that he is fabricating evidence to justify his conduct. There are many assertions of falsehoods "[P]articular falsehoods in a witness's testimony [may] so undermine his credibility as to warrant disbelieving the rest of his testimony – or a critical part." *United States v. Edwards*, 581 F.3d 604, 612 (7th Cir. 2009).

Taking the facts in the light most favorable to the plaintiff, as the Court is required to do at this stage, he has shown that the defendant violated his Fourth

11

Amendment rights by arresting him without probable cause. *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003)   An arrest based on fabricated evidence has been clearly established as a Fourth Amendment violation in the Seventh Circuit for some time. See,. e.g., *Washington v. Haupert*, 481 F.3d 543, 551 (7th Cir. 2007):

> According to the plaintiffs, the police officers fabricated a police report in order to justify their arrests. A reasonable officer would have understood that what he was doing violated their right to be free from unreasonable seizure. See *Driebel v. City of Milwaukee*, 298 F.3d 622, 652 (7th Cir.2002)  (holding that "innumerable decisions ... have clearly established the right to be free from arrest without probable cause").

The law was clearly established; the facts of this case are similar to those found in *Chelios v. Heavener*, 520 F3d 678, 692 (7th Cir. 2008):

> When the facts of this case are taken in the light most favorable to him, Mr. Chelios has shown that Sergeant Heavener violated his constitutional rights by arresting him without probable cause. Moreover, given that, under his version of the facts, Mr. Chelios had not made physical contact with Sergeant Heavener, conducted himself in a disorderly manner or otherwise obstructed or impeded Sergeant Heavener in his duties, we believe that case law would have put him on notice that Mr. Chelios had a right to be free from arrest under the particular circumstances of this case. *See, e.g., Pourghoraishi v. Flying J., Inc.*, 449 F.3d 751, 762 (7th Cir.2006) (explaining that an officer did not have probable cause to arrest where the individual "did not raise his voice, use profanity, make unreasonable noise, or otherwise engage in any behaviors prohibited by the disorderly conduct statute").

## B. The Defendant Used Excessive Force in Arresting the Plaintiff.

A claim that a police officer has used excessive force in the course of an arrest of a citizen is reviewed pursuant to standards established by the Fourth Amendment. *Graham v. Connor,* 490 U.S. 386, 395 (1989); *Abdullahi v. City of Madison,* 423 F.3d 763, 768 (7th Cir.2005). An officer's use of force is unreasonable from a constitutional point of view if, "judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Lester v. City of Chicago,* 830 F.2d 706, 713 (7th Cir.1987).

The court must consider the facts and circumstances of the case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* A factual inquiry into an excessive force claim "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom...." *Abdullahi,* 423 F.3d at 773 (internal quotation marks omitted).

Although injury may be one relevant factor in determining whether an officer used excessive force, an excessive force claim "does not require any particular degree of injury." *Chelios v. Heavener,* 520 F.3d 678, 690 (7th Cir. 2008). The Seventh Circuit has characterized placing weight on the lack of injuries as "a mistake," noting "although evidence of injury can throw some light on the question whether the officers used excessive force, there is no requirement that plaintiffs show any particular degree of

13

injury." *Gonzalez*, 578 F.3d at 539-40. *See also, Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 687 (7th Cir.2007) ("That [a plaintiff's] injuries may have been minor does not militate against a finding of excessive force."); *McNair v. Coffey*, 279 F.3d 463, 468 (7th Cir.2002) (Cudahy, J., concurring) ("Physical injury is not a necessary element of a claim for excessive force.").

The Plaintiff asserts that after he put his car away and was returning to his house, Officer Schulteis came up behind him, put him in headlock motion and slammed him down, face forward, onto the hood of the car. According to his own testimony and that of his wife, Bautista had offered no physical resistance whatsoever. He was in shock and pain as a result of Schulteis conduct, exacerbated by having just had oral surgery. To Sharon Stuebs, the degree of force that she observed Schulteis use on her husband was "shocking." PPFOF # 79-87  Further, the handcuffs were put on very tightly, causing further pain.

It is understood that Office Schulteis has a different view of the facts, but at this stage, the court is required to credit the testimony most favorable to the Plaintiff. Given that, there was no justification for Officer Schulteis to use **any** force on John Bautista, as, other than telling Schulteis that he had no right to be in the garage without a warrant, he offered no resistance.   There is never a justification for handcuffing an arrestee too tightly – that use of force is simply punitive.

14

Case 2:12-cv-00126-NJ   Filed 03/04/13   Page 14 of 19   Document 36

### C. The Defendant Detained the Plaintiff for an Unreasonably Long Time, Handcuffed in Squad Car, Before Conveying him to Jail.

The Plaintiff also asserts that being held for an hour in a squad car before being transported to jail is an unreasonable seizure. For one thing, Mr. Bautista wa forced to endure the pain of having his arms secured behind his back by handcuffs that cut off his circulation for over an hour. PPFOF #'s 94-96. "Unreasonable actions include the use of … restraints that cause unnecessary pain or are imposed for a prolonged and unnecessary period of time." *Los Angeles County, California v. Rettele,* 550 U.S. 609, 614 (2007).

There may be some circumstances where an officer is unable, due to circumstances beyond his control, to take an arrestee to be booked and processed and released immediately upon arrest, but here the delay was entirely of Schulteis' own making. Having arrested Bautista and deposited him in the squad car, he chose to spend an hour interviewing witnesses and filling out paperwork, in spite of the fact that another officer was on the scene. PPFOF #'s 97-98, 103-108.

"Needless delay, or delay for delay's sake—or, worse, delay deliberately created so that the process becomes the punishment—violates the Fourth Amendment." *County of Riverside v. McLaughlin,* 500 U.S. 44, 56, (1991). "If the police choose to perform time-consuming tasks after an arrest, perhaps they must do so on their own time rather than the suspect's, issuing a citation rather than keeping the suspected locked up in the interim." *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 437 (7th Cir. 1986). The

15

reasonableness of a length of detention typically "is a question best left open for juries to answer based on the facts presented in each case." *Lewis v. O'Grady*, 853 F.2d 1366, 1370 (7th Cir.1988).

## VI. STATE LAW CLAIM: MALICIOUS PROSECUTION

There are six elements of the tort of malicious prosecution: (1) prior institution of judicial proceedings against the plaintiff in the action for malicious prosecution; (2) the former proceeding was by, or at the instance of, the defendant in the action for malicious prosecution; (3) the former proceeding was terminated in favor of the defendant therein who is the plaintiff in the action for malicious prosecution; (4) malice in the institution of the former proceeding; (5) a want of probable cause for the institution of the former proceeding; and (6) injury or damage suffered by the plaintiff in the malicious prosecution proceeding as a result of the former proceeding. *Pollock v. Vilter Mfg. Corp.*, 23 Wis.2d 29, 37, 126 N.W.2d 602 (1964); *Wisconsin Pub. Serv. Corp. v. Andrews,* 2009 WI App 30, ¶ 23, 316 Wis.2d 734, 766 N.W.2d 232, *review denied,* 2009 WI 98, 321 Wis.2d 47, 775 N.W.2d 254 .

The existence of many of the elements is obvious and proven by direct evidence: the prosecution was initiated as a result of Schulteis police report and request for prosecution; the report was false; the case was dismissed, and Bautista has asserted his arrest was without probable cause. The presence of malice and of injury depend upon

16

circumstantial evidence. The Plaintiff asserts that since his arrest, others with whom he and his wife were friendly now avoid him. PPFOF # 135.

Since this case involves the question of malicious intent, summary judgment precepts holding that the plaintiff is entitled to prevail at every point where the evidence is in conflict and that the plaintiff is entitled to have all available inferences drawn in her favor, even if a trier of fact might choose not to draw such inferences, should be scrupulously observed. Courts must be quite circumspect in evaluating the movant's factual averments "when evidence bearing on a particular matter lies within the exclusive possession of the party seeking summary judgment." *Avery v. Mapco Gas Prods., Inc.,* 18 F.3d 448, 452 n.4 (7th Cir. 1994); *see also Reserve Supply Corp. v. Owens-Corning Fiberglass Corp.*, 971 F.2d 37, 42 (7th Cir. 1992).

Circumstantial evidence from which an inference of unlawful intent can be drawn is sufficient to create a triable issue of fact even in the face of the actor's declaration that no unlawful intent was present. See, e. g., *Corrugated Paper Prods. v. Longview Fibre Co.*, 868 F.2d 908, 914 (7th Cir. 1989). There is sufficient evidence to let a jury decide.

The Defendant also asserts that he is entitled to discretionary immunity for state law claims. The only state law claim is the one for malicious prosecution, and it is based upon the theory that that the Defendant flat-out lied in his police report. This is not an instance where subtle or confusing factors made up a discretionary decision.

17

This is a case of a police officer saying that a person he was trying to arrest took a swing at him when no such thing ever happened. This situation is not covered by discretionary immunity.

### VII. VILLAGE'S LIABILITY

The Defendant Village seeks to avoid liability for any intentional torts of Office Schulteis. The Plaintiff is not asserting any direct liability claims against the Village, only indemnification pursuant to the requirement that a municipality satisfy any judgment entered against its employee found in § 895.46, Wis. Stats. The Plaintiff does not allege that the wrongful acts alleged herein were carried out pursuant to a custom or policy of the Village of Lomira. Any immunity that the Village claims under Wis. Stat. § 893 does not apply to the federal causes of action.

Dated this 4th day of March, 2013

Respectfully submitted,

John J. Bautista, Plaintiff

By

ATTORNEYS FOR PLAINTIFF

THE JEFF SCOTT OLSON LAW FIRM, S. C.
Jeff Scott Olson
State Bar Number 1016284
131 West Wilson Street, Suite 1200
Madison, Wisconsin 53703
Phone   (608) 283-6001

18

Fax (608) 283-0945
Email JSOlson@scofflaw.com

/s/ Jeff Scott Olson
_____
Jeff Scott Olson

**Certificate of Service**

I hereby certify that on Monday, March 04, 2013, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Joseph M. Wirth and Matthew L. Grantiz, Attorneys for Defendants, and I hereby certify that I have mailed by United States Postal Service the document to the following non ECF participants: none.

_____/s/ Jeff Scott Olson_____
Jeff Scott Olson, Attorney for Plaintiff